UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| Plaintiff-Respondent, | § |
| | § |
| V. | § CRIMINAL ACTION NO. H-10-197 |
| | § CIVIL ACTION  NO. H-12-3226 |
| STEVEN T. CARR, | § |
| | § |
| Defendant-Movant. | § |

**MEMORANDUM AND RECOMMENDATION DENYING MOVANT'S
§ 2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE**

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is the Government's Response (Document No. 244) to Movant/Defendant Steven T. Carr's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 228).  Having considered Carr's Motion to Vacate, Set Aside or Correct Sentence, the Government's Response, the record of the proceedings in the underlying criminal case and on appeal, the affidavits of counsel (Document Nos. 239 & 243), and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Carr's § 2255 Motion to Vacate, Set Aside or Correct Sentence be DENIED, and that this § 2255 proceeding be DISMISSED on the merits.

**I.     Procedural History**

Movant Steven T. Carr ("Carr"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255.  This is Carr's first motion pursuant to § 2255.

On April 26, 2010, Carr was charged, along with one co-defendant, in a two-count superseding indictment with conspiracy to interfere with commerce by threats or violence (count one) and interference with commerce by threats or violence (count two) (Document No. 11). Carr pled not guilty and proceeded to trial. On November 18, 2010, a jury found Carr guilty of both counts alleged in the superseding Indictment. (Document Nos. 82 & 86). On March 25, 2011, following the preparation of a presentence investigation report, to which Carr filed Objections (Document Nos. 99 & 106), Carr was sentenced to 87 months confinement, to be followed by a three year term of supervised release, and restitution in the amount of $175,000. (Document No. 112). A Judgment of Conviction was entered on March 28, 2011. (Document No. 116).

Carr appealed to the Fifth Circuit Court of Appeals, which affirmed his conviction in an unpublished opinion on March 26, 2012 . (Document Nos. 222 & 223)). His petition for writ of certiorari was denied on October 1, 2012. (Document No. 226). This § 2255 proceeding, filed on or about October 24, 2012, the date Carr signed his § 2255 motion, followed. (Document No. 228).

The Government has filed a Response to Carr's § 2255 Motion. (Document No. 244). In addition, the record has been expanded, upon the Government's motion, to include the affidavit of Gerardo S. Montalvo, Carr's trial counsel (Document No. 239), and Jay Hileman, the prosecutor (Document No. 243). Carr has not filed a response to his trial counsel's affidavit, but has objected to the prosecutor's affidavit on relevancy grounds. (Document No. 245). This § 2255 proceeding is now ripe for ruling.

## II. Factual Background

The factual background, which provides a context for the consideration of Carr's claims, is set forth by the Fifth Circuit Court of Appeals in its unpublished opinion as follows:

> This case arises from a dispute over the international shipment of scrap metal. A broker and two groups of buyers of scrap metal were in India. Two other brokers in Houston, Texas, a buyer/broker in Florida, and the company that actually owned the scrap metal in New Jersey, had roles in the transaction.
>
> One of the businesses, BNP Imports, located in Houston, was owned by Gope Pagarani. He was the victim in the crime underlying this Hobbs Act prosecution. Pagarani operated a scrap metal yard in Houston and also was a broker. He was hired by a scrap metal broker in India to assist in completing a purchase of metal located in a New Jersey yard owned by Trenton Iron and Metals. Pagarani had an established business relationship with the companies for whom the broker in India worked. Another Houston broker, Osaka Metals, had already purchased the scrap metal from Trenton and reached an agreement on its sale with the Indian broker. Osaka had not been informed, though, of the identity of the company for whom the broker worked. Pagarani testified that he was hired to keep the identities secret.
>
> To maintain that secrecy, Pagarani would use his company's established line of credit with Wells Fargo, a federally-insured bank. Using this line of credit as well as some of its own money, Pagarani purchased $497,000 of scrap metal from Osaka. Shortly after this purchase, Pagarani was contacted by Alfa Metals, a Florida firm. Alfa also wanted to buy scrap metal for a buyer in India. It paid Pagarani approximately $270,000 for a portion of the scrap metal it was buying from Osaka.
>
> The scrap metal itself remained in New Jersey. Pagarani went to inspect the metal early in the negotiations and found it to be acceptable. Once all the agreements were finalized among the different parties, the scrap metal was supposedly shipped from New Jersey to India in 81 containers. Of those, 31 containers went to the buyers for whom Alfa had contracted. Upon arrival in India, it was discovered that the containers held only landfill garbage.
>
> Pagarani was told that the buyers in India would not pay anyone until they received the scrap metal. Pagarani traveled to New Jersey to meet with Alfa and Trenton Iron representatives. Trenton said it would look into the problem but made no commitments. Alfa, represented by Carr and another individual, demanded a full and immediate refund from Pagarani. The latter agreed to refund the money but explained that he could not do so until he had himself received a refund. Pagarani returned to Texas without paying.

> Two weeks later, Carr traveled from New Jersey to Houston to press his demand. Carr did so forcefully, ambushing Pagarani in his office. For over four hours, Carr and another man threatened Pagarani and struck him multiple times. Eventually, Pagarani wrote six checks. Five were made out to Alfa and served as a refund. The sixth, for $25,000, was payable to Carr personally. He demanded the payment was the equivalent of a collection fee.
>
> Carr immediately cashed his check. Due to insufficient funds remaining in the account, the remaining checks were cancelled. A refund was then made via wire transfer, relying on the line of credit extended to BNP by the federally-insured bank.
>
> A few days later, Pagarani reported these events to the FBI. Following an investigation, a federal grand jury returned a two-count indictment against Carr.

*United States v. Carr*, No. 11-20206 (Document No. 223) at 2-3.

### III.   Claims

Carr alleges that his trial counsel, Gerardo Montalvo, was ineffective in three respects:

1. for failing to communicate a plea offer to him;

2. for failing to call certain witnesses at trial to show that he was "not guilty of stealing anything;" and

3. for failing to bring to the Court's attention a racial slur made to him by a deputy Marshal and that same deputy's conduct which allowed Carr to be viewed by members of the jury in handcuffs and leg restraints.

The Government, in its Response to Carr's § 2255 Motion, argues that none of Carr's ineffectiveness claims have any merit. With respect to the first claim, the Government maintains that no plea offer existed at any time, and that Carr's conclusory and unsupported allegations to the contrary should be summarily rejected. With respect to the second claim, the Government argues that counsel's performance was reasonable and that the uncalled witnesses identified by Carr could not have provided any favorable testimony. Finally, with respect to the third claim, the Government argues

4

that counsel's performance was reasonable, that counsel conducted his own investigation into the jury viewing Carr in handcuffs and restraints and determined that it was not prejudicial, and that counsel was never made aware of a racial slur made to Carr by a deputy Marshal.

### IV.  Discussion

Claims of ineffective assistance of trial counsel are generally measured by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). To be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id*. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's

deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690-691. Counsel will not be judged ineffective only by hindsight.

### A.     Plea Offer

In his first claim, Carr alleges that his trial counsel failed to communicate a plea offer to him. In support of this claim, the entirety of Carr's allegations are as follows:

> Petitioner avers that counsel was ineffective for failing to address in a timely manner, that the prosecution had offered a plea agreement deal to counsel. Counsel at no time during pretrial proceedings put on notice to petitioner of this plea negotiations conducted by the prosecution. If petitioner had a chance to evaluate the plea and make a willfully and conscious decision he would have pled to the instant offense and avoided going to trial.

§ 2255 Motion (Document No. 228) at 5.

In *Missouri v. Frye*, ___ U.S. ___, 132 S.Ct. 1399, 1408 (2012), the United States Supreme Court held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. . . . When defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." *See also Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376, 1387 (2012) ("If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence."). Here, while it cannot be contested that Carr's trial counsel was obligated to communicate to, and advise Carr about, any plea offers made by the Government, there is no evidence, *whatsoever*, that the Government ever made a plea offer. The prosecutor, Jay Hileman, makes this abundantly clear in the affidavit he filed: "No plea bargain was ever offered in this case. I never contacted the defendant's attorney and made a plea offer." (Document No. 243).[1] Similarly, Carr's trial counsel, Gerardo Montalvo, states in unequivocal terms that no plea offer was made by the Government: "The trial and prosecuting Assistant United States Attorneys in this case were Jay Hileman and David Searle. Neither offered Mr. Carr a plea offer or agreement." (Document No. 239). Carr has not alleged any facts that would support his claim that his trial counsel failed to communicate a plea offer to him. His allegations in that regard are conclusory and will not support any relief. *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th

---

[1] Carr has objected to Mr. Hileman's affidavit as not relevant (Document No. 245). The relevancy objection(s) is OVERRULED.

Cir. 1983) (conclusory allegations of ineffective assistance of counsel are insufficient to warrant relief).

### B. Uncalled Witnesses

In his second ineffectiveness claim, Carr maintains that his trial counsel was ineffective for failing to investigate, and call as witnesses at trial: (1) two police officers who responded to an ADT alarm at the victim's office while Carr was present; and (2) the bank teller who cashed the victim's check after verifying the check with the victim. These uncalled witnesses, Carr argues, could have provided testimony that he did not steal anything from the victim. Carr alleges in this regard as follows:

> . . . Counsel failed to call upon two officers that had responded to the ADT alarm, and further failed to call up the teller at the Bank as was requested by the petitioner. These witnesses, if [they] had been called to testify would have help[ed] prove that the petitioner was indeed not guilty of stealing anything, that the bank teller had indeed called and varified [sic] the check.
>
> * * *
>
> Counsel failed to investigate, then call to the stand for witness, the two officers that responded to the ADT alarm, those two officers, had they been called to testify would have proved that petitioner was indeed not guilty of the stealing charge. Furthermore, petitioner had repeatedly ask[ed] counsel to produse [sic] not only those two officers, but also the teller at the bank which told the officers that she had indeed called to varify [sic] that the check was good.

§ 2255 Motion (Document No. 228) at 5, 8.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009); *see also Buckley v. Collins*, 904 F.2d 263, 266 (5th Cir.), *cert. denied*, 498 U.S. 990 (1990);

8

*Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986), *cert. denied*, 479 U.S. 1030 (1987). "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the contents of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day*, 566 F.3d 538; *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (To demonstrate error, or ineffective assistance of counsel, the petitioner must prove that a witness's testimony would have helped him, and that the witness would have testified to certain facts or information at trial).

      Here, Carr's ineffectiveness claim based on counsel's failure to call as witnesses the two police officers who responded to the ADT alarm, and the bank teller, fails for lack of any evidence or allegations as to the favorable substance of those witnesses' testimony. Carr believes that both the officers and the bank teller would provide testimony tending to show that he did not steal anything. However, Carr does not allege specifically, or generally, what testimony would have been favorable or exculpatory. The record shows that two police officers responded to an ADT alarm at the victim's business, and although Carr was present when the officers arrived, the victim's wife told the officers that there was "no problem" and that they didn't need any police assistance. Trial Transcript, Day One (Document No. 93) at 131; 205-206. Carr has not shown what more the police officers could have added to the evidence and testimony already in the record about the ADT alarm. Similarly, the record shows that the bank teller, prior to cashing the check presented by Carr, verified with the victim that the check was authentic. Trial Transcript, Day One (Document No. 93) at 138. Again, Carr has not shown what more the bank teller could have added to the evidence and testimony already in the record.

9

Similarly, Carr has not, and cannot show, that counsel's decision not to call the two police officers, or the bank teller, was the product of anything other than reasoned trial strategy. Mr. Montalvo stated in his affidavit:

> Counsel addressed each possible and potential witness with defendant. Jointly, it was determined who to call as a witness and who not to call as a witness. Counsel believed that the two law enforcement officers that Mr. Carr referenced in his petition only had the potential to hurt defendant's case. Additionally, undisputed trial testimony revealed that the officers responded to the alarm and were lied to and turned away. Regarding the bank teller, undisputed testimony during trial revealed that the bank indeed called and verified the check.

(Document No. 239) at 2. Mr. Hileman likewise stated in his affidavit:

> Mr. Carr complains that his attorney failed to call certain witnesses at his trial. I interviewed those witnesses in preparation for trial. Several of the witnesses Carr references were in fact subpoenaed and present at the trial. I saw defense counsel speaking to some if not all of these witnesses in the hallway during recesses. These witnesses would not have testified to matters that would have been helpful to the defense. Their testimony would have been largely repetitive and cumulative to the testimony already heard by the jury. The witnesses Carr references had no information related to any of the issues in dispute at the trial. Carr complains that a bank teller was not called as a witness. He claims this bank teller would testify that a certain check was "verified" by the victim. This issue was not in dispute. The victim testified that the bank teller called him and asked him if he wanted Carr to cash the check. The victim undisputedly testified that he told the bank teller to allow Carr to cash the check. This witness was cumulative.

(Document No. 243) at 1-2. Carr has not contested the correctness of the contents of either affidavit, and has not himself presented any controverting evidence.

Upon this record, the decision of trial counsel not to call the police officers and the bank teller as witnesses was the product of reasoned trial strategy. In addition, upon this record, where there was already evidence in the record as to the response to the ADT alarm, and the verification of the victim's check upon presentment by Carr, there is no reasonable likelihood that the result of the trial would have been different if the two police officers and the bank teller were called as

10

witnesses. This ineffectiveness claim, based on uncalled witnesses, fails under both the deficiency and prejudice prongs of *Strickland*.

### C. Alleged Misconduct of Deputy Marshal

In his final ineffectiveness claim, Carr faults his counsel for failing to bring the alleged misconduct of a deputy Marshal to the Court's attention:

> . . . . Counsel failed to enter into the record that a "Black" US Marshal, that was in charge of moving the petitioner to and from lock-up and to the court room, had made a "racial slur" and purposely led petitioner out into the hall, where two jurors returning from the rest room saw petitioner in suit and tie, and in chains and cuffs during deliberation. Counsel told petitioner that all this should be brought up in an appeal, but refused to mention it at anytime during trial or sentencing, then there was never anything brought up about this incident on appeal documents.
>
> * * *
>
> Counsel failed to bring to the attention of the Court that, not only did a US Marshal that was in charge of bailiff duties and lock-up, at 2:00 pm on November 16, 2010 made the defendant walk out into the hall while dressed in his suit, but was chained and cuffed, and made a "racial" statement to the defendant saying "come this way Cracker white boy, there is a juror that wants to see you in your real clothing before they make a final decision as to your fate." The petitioner was then led into the hall where there [were] 2 jurors, 3 and 4 coming out from the rest room, or back into the courtroom. This alone violated the petitioner's right to a fair trial because those two jurors [were] in the process of deciding whether [ ] or not the accused was a violent person. There is a reason why defendant[s] are allowed to attend trial without being in cuffs[;] that reason is so that a jury might not draw a wrong conclusion as to seeing one in restraints.

§ 2255 Motion (Document No. 228) at 5, 8.

Although not raised as an ineffective assistance of counsel claim, Carr did raise, on direct appeal, his claim that he was viewed by jurors in handcuffs and prison clothing. The Fifth Circuit Court of Appeals rejected the claim on plain error review, finding nothing in the record to show that any juror viewed him in handcuffs and prison clothing, and no evidence of prejudice to Carr from

11

the alleged viewing. *Carr*, at 5-6. Here, brought as an ineffective assistance of counsel claim, Carr must show that counsel should have brought the alleged viewing and the alleged "racial slur" to the Court's attention, and that counsel's failure to do so prejudiced him.

"A defendant is not necessarily prejudiced by a brief or incidental viewing by the jury of the defendant in handcuffs. To receive some form of relief, the defendant must show he suffered actual prejudice from the exposure." *White v. Johnson*, 111 F.3d 892, 1997 WL 156829, *8 (5th Cir. 1997). Here, there is no evidence, suggestion, or reasonable probability that Carr was prejudiced by his alleged exposure to two jurors while in handcuffs and restraints. As alleged by Carr himself, it was only two jurors, not the entire jury panel, that viewed him in handcuffs and restraints. In addition, the viewing was, by Carr's own allegations, brief and incidental. Finally, Carr has not contested the contents of his counsel's affidavit in this regard, in which he stated:

> Counsel recalls that defendant stated that he believed one or two jurors saw him in the hallway walking with the Marshals towards the courtroom. Counsel does not recall the defendant telling him any racial slurs were made towards the defendant. Counsel questioned the marshals on duty who advised no jurors had seen the defendant in chains or cuffed. Defendant is correct, counsel did not report this to the court.

(Document No. 239) at 2. Upon this record, counsel was not ineffective, within the meaning of *Strickland*, for failing to bring to the Court's attention the alleged viewing of Carr in handcuffs and restraints by two jurors.

Relatedly, there is no support in the record for Carr's allegation that a deputy Marshal made a racial slur to him. Carr's counsel does not recall being told by Carr about such a racial slur, and such a claim was not raised by Carr on direct appeal. Moreover, even if such a racial slur had been made to Carr, and even if the comment had been brought to the Court's attention, such a comment

would not have prejudiced Carr within the meaning of *Strickland*. Carr does not allege that the deputy Marshal made the comment in front of, or to, jurors, as was at issue in *Parker v. Gladden*, 385 U.S. 363, 87 S.Ct. 468 (1966) (reversing judgment where bailiff made comments to a juror, in the presence of other jurors, about the defendant's wickedness and guilt). Carr doesn't even allege (nor could he) that the alleged comment had any effect on the verdict or his sentence. Therefore, even if the alleged comment was made, Carr was not prejudiced by his counsel's failure to bring the issue to the Court's attention.

In all, no relief is available under *Strickland* on Carr's claim that his counsel was ineffective for failing to bring the alleged misconduct of the deputy Marshal to the Court's attention.

## V.     Conclusion and Recommendation

Based on the foregoing and the conclusion that no relief is available to Movant Steven T. Carr on any of the ineffective assistance of counsel claims he raises in this § 2255 proceeding, the Magistrate Judge

RECOMMENDS that Movant Steven T. Carr's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 228) be DENIED, and that this § 2255 proceeding be DISMISSED on the merits. The Magistrate Judge further

RECOMMENDS that Movant Steven T. Carr's related "Motion for Bail and Suspension of Execution of Sentence Pending Appeal" (Document No. 237), in which Carr asks to be released on bail pending consideration of his § 2255 motion, also be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 10th day of June, 2013.

Frances H. Stacy
United States Magistrate Judge